IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANTANDER CONSUMER USA, INC., | § § § | |
| Plaintiff, | § § | No. 3:21-cv-2471-L |
| V. | § § | |
| SANDY SANSING NISSAN, INC., SANDY SANSING CHEVROLET, INC., SOUTHERN CHEVROLET, INC. dba BMW MINI OF PENSACOLA, SANDY SANSING MILTON CHEVROLET, LLC dba SANDY AND BUBBA'S MILTON CHEVROLET, SANDY SANSING FORD-LINCOLN LLC, SANDY SPRINGS BROOKHAVEN, LLC. SANDY SANSING NISSAN HOLDING, INC. dba SANDY SANSING MAZDA, and SANDY SANSING CDJR, LLC, | § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Defendants Sandy Sansing CDJR, LLC ("CDJR"), Sandy Sansing Chevrolet, Inc. ("Sansing Chevrolet") Sandy Sansing Ford-Lincoln, LLC ("Ford"), Sandy Sansing Imports, Inc. ("Sansing Imports"), Sandy Sansing Milton Chevrolet, LLC ("Milton"), Sandy Sansing Nissan Holding, Inc. ("Sansing Holding"), Sandy Sansing Nissan, Inc. ("Sansing Nissan"), Sandy Springs Brookhaven, LLC ("Brookhaven"), and Southern Chevrolet, Inc. ("Southern") have filed a Motion to Dismiss/Transfer for Lack of Personal Jurisdiction and Rule 12(b)(6) Motion to Dismiss, *see* Dkt. No. 10, to which Plaintiff Santander Consumer USA ("Santander") objects. *See* Dkt. No. 17.

Plaintiff Santander has filed a Motion to Remand to State Court, *see* Dkt. No. 13, to which Defendants object. *See* Dkt. No. 22. United States District Judge Sam A. Lindsay has referred these motions to the undersigned United States Magistrate Judge for hearing, if necessary, and findings and recommendation, *see* Dkt. No. 19.

For the reasons and to the extent explained below, the undersigned recommends that the Court deny Santander's Motion to Remand to State Court [Dkt. No. 13] and grant Defendants' Alternative Motion to Transfer Venue under 28 U.S.C. § 1404(a) [Dkt. No. 10] and deny Defendants' Alternative Motions to Dismiss under 12(b)(2), (3), and (6) for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim [Dkt. No. 10].

## Background

This case arises from the purported breach of Master Agreements ("Agreement") between Plaintiff Santander, an auto finance company, and Defendants, who together comprise nine vehicle dealerships. *See* Dkt. No. 1-1 at 20. Per its Agreement with each dealership, Santander purchased a number of retail installment contracts for automobiles sold by Defendants to customers. *See id*. Santander contends that, while these were non-recourse purchases, the Agreements included representations and warranties made by Defendants in the offer and sale of the contracts and provide for remedies of reimbursement to Santander and/or repurchase of the contracts if one of the representations fails or an event of reimbursement is triggered. *See id*.

Santander alleges that several of Defendants' representations/warranties

failed as to hundreds of retail installment sales contracts which triggered a right to reimbursement or repurchase. *See id*. After purportedly making an unsuccessful written demand to each of Defendants for the amount allegedly owed under the Agreement provisions, Santander filed a lawsuit in the 193rd District Court of Dallas County, Texas, bringing claims for breach of contract against Defendants. *See* Dkt. No. 1.

Defendants timely removed the case to federal court based on complete diversity of citizenship, *see* Dkt. No. 1, and then filed a Motion to Dismiss/Transfer for Lack of Personal Jurisdiction and Rule 12(b)(6) Motion to Dismiss, *see* Dkt. No. 10. Santander then filed its Motion to Remand to State Court for Lack of Federal Jurisdiction. *See* Dkt. No. 13. The undersigned turns first to Santander's Motion to Remand before considering Defendants' Motions to Dismiss or Transfer.

## I.    Plaintiff's Motion to Remand

### 1.    *Federal Jurisdiction and Removal*

A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332.

A defendant may remove an action filed in state court to federal court on the basis of diversity if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001).

28 U.S.C. § 1332 creates federal subject matter jurisdiction where diversity of

citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), (b). "A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). To establish subject matter jurisdiction, "the party asserting federal jurisdiction must distinctly and affirmatively allege [] the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (citation and internal quotations omitted). And, if no amount of damages was alleged in the state court petition, a removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995).

For purposes of diversity jurisdiction, a limited partnership "assumes the citizenship of each of its partners." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 856 n. 3 (5th Cir. 2003). Similarly, the citizenship of a traditional trust is determined by the citizenship of its trustees. *See Wells Fargo Bank v. Transcon. Realty Invs.*, No. 3:14-cv-3565-BN, 2016 WL 3570648, at *3 (N.D. Tex. July 1, 2016). And, where members of an LLC or trust are themselves entities or associations, citizenship must be traced through however many layers of members or trustees there are, until arriving at an entity that is not an LLC. *See, e.g., Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 397-98 (5th Cir. 2009).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## I.     Plaintiff's Motion to Remand Should be Denied

Santander contends that Defendants failed to properly allege the citizenship of all Defendants and have thus failed to meet their burden to establish that this Court has subject matter jurisdiction over its claims against Defendants based on complete diversity of citizenship between the parties.

In their Notice of Removal, Defendants allege the citizenship of Milton as "a limited liability company organized under the laws of the State of Florida maintaining its principal place of business at 5925 Hwy 90 W, Milton, Florida 32583." Dkt. No. 1 at 3. Defendants identify Milton's sole member as "Sandy Sansing Milton Chevrolet Holding," which in turn has "four members: a LLC titled "Series 21 of Sansing Holdings, LLC" and three individual persons, each of whom is domiciled in and a citizen of the State of Florida. *Id*. Series 21 of Sansing Holdings, LLC is identified as a series limited liability company with two members: Robert C. Sansing (domiciled in and a citizen of Florida) and the Robert C. Sansing Irrevocable Business Succession Trust, "whose sole trustee is domiciled in and a citizen of the State of Florida." *Id*. at 3-4.

Defendants allege that Ford "is a limited liability company organized under the laws of the State of Florida maintaining its principal place of business at 27180 Hwy. 98, Daphne, Alabama 36526." Dkt. No 1 at 4. Defendants identify Ford's sole member as Sandy Sansing Automotive Holding LLC, which in turn has two members: "an individual person who is domiciled in and a citizen of the State of Florida" and "a LLC titled 'Series 16 of Sansing Holdings, LLC,' which also has two members: Robert

C. Sansing and the Robert C. Sansing Irrevocable Business Succession Trust, "whose sole trustee is domiciled in and a citizen of the State of Florida." *Id.*

Defendants allege that Brookhaven "is a limited liability company organized under the laws of the State of Florida maintaining its principal place of business at 5705 Pensacola Blvd., Pensacola, Florida 32505." *Id.* Defendants identify Brookhaven's sole member as 890 Brookway LLC, a limited liability company organized under the laws of the State of Florida, whose members are "an individual person who is domiciled in and a citizen of the State of Florida," the David Robert Sansing Irrevocable Trust, whose sole trustee is domiciled in and a citizen of the State of Florida," and Series 25 of Sansing Holdings, LLC. Dkt. No 1 at 4-5. Series 25's members are identified as Robert C. Sansing and the Robert C. Sansing Irrevocable Business Succession Trust, whose citizenship and membership's citizenship are identified as listed above. *See id.* at 5.

Finally, Defendants allege that CDJR "is a limited liability company organized under the laws of the State of Florida maintaining its principal place of business at 6348 Highway 90 West, Milton, Florida 32570." Dkt. No 1 at 5. Defendants identify CDJR's sole member as Sandy Sansing CDJR Holding LLC, which in turn has two members: "an individual person who is domiciled in and a citizen of the State of Florida" and Series 26 of Sansing Holdings, LLC. Series 26 is alleged to have two members, Robert C. Sansing and the Robert C. Sansing Irrevocable Business Succession Trust, whose citizenship and membership's citizenship are identified as above. *Id.*

Santander argues that because Defendants identify critical LLC and trust members only as "individual persons domiciled in and citizens of the State of Florida," they have "failed to meet their burden to clearly, distinctly, or precisely identify all members of the LLC Defendants and to establish the citizenship of all members of each of the LLC Defendants," which precludes determination of the citizenship of four of the nine defendants in this case. Dkt. No. 13 at 8.

Defendants respond that, while they withheld from the public filing the names of those LLC and trust members that are natural persons "[t]o preserve their privacy," the Notice of Removal details the membership structure of the LLCs and trusts and the citizenship of each member/trustee and thus does establish the citizenship of all the parties. Dk. No. 22 at 5.

Santander is correct that, to properly establish diversity jurisdiction where one or more parties is an LLC or trust, a notice of removal must both identify all members *and* allege their citizenship. *See MidcapMedia*, 929 F.3d at 314; *see also Murchison Cap. Partners, L.P. v. Nuance Commc'ns, Inc.*, No. 3:12-cv-4749-P, 2013 WL 12094167, at *2 (N.D. Tex. Mar. 22, 2013) (holding that a notice of removal that makes no mention of an unincorporated organization's members or their respective states of citizenship is insufficient to establish the existence of diversity jurisdiction). Merely alleging the citizenship of unnamed, unidentifiable natural persons is insufficient to establish citizenship. And failure to allege the citizenship of all parties prevents the Court from determining whether there is complete diversity among the parties such that the Court may find it has jurisdiction over the case. In other words,

Defendants' allegations of citizenship are defective.

But Congress has granted courts the authority and discretion to allow a party to cure defective allegations of jurisdiction. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts"); *see also Vance v. Safety-Kleen Sys., Inc.*, No. 3:21-cv-2171-B, 2021 WL 6063619, at *3 n.2 (N.D. Tex. Dec. 20, 2021) (internal citations omitted); *Moore v. Gladiator Events, LLC*, No. 3:15-cv-5459625, 2015 WL 5459625, at *2 (N.D. Tex. Sept. 15, 2015); *Murchison Cap.*, 2013 WL 12094167, at *2. Section 1653 is liberally construed to allow a party to cure technical defects, including the failure to specifically allege the citizenship of the parties. *See Getty Oil Corp. v. Ins. Co. of Am.*, 841 F.2d 1254, 1258 n.5 (5th Cir. 1988); *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887-88 (5th Cir. 2000).

"Where there is a defective allegation of citizenship, a removing party may supplement its allegations to cure the defect." *Vance v. Safety-Kleen Sys., Inc.*, No. 3:21-CV-2171-B, 2021 WL 6063619, at n.2 (N.D. Tex. Dec. 20, 2021) (internal citations omitted). And "in determining whether it has diversity jurisdiction over a case, a court may consider affidavits filed in response to a motion to remand." *Vance*, 2021 WL 6063619, at n.2. (citing *Willingham v. Morgan*, 395 U.S. 402, 408 n.3 (1969) ("[F]or purposes of [determining whether an action is removable], it is proper to treat the removal petition as if it had been amended to include ... relevant information contained in ... later-filed affidavits.")). Likewise, "[s]tatements in a responsive pleading to a motion to remand may also cure jurisdictional defects in the removal

petition." *Molina v. Wal-Mart Stores Texas, L.P.*, 535 F.Supp.2d 805, 807 (W.D. Tex. 2008). Defendants do this in their Response to Plaintiff's Motion to Remand, identifying, by name, the relevant members and trustees as well as restating their citizenship and their specific role within the structure of each LLC Defendant whose citizenship is ultimately at issue here. *See* Dkt. No. 22 at 6-8.

Santander objects to Defendants' request to supplement its allegations in this manner, arguing that the request should be denied because the omitted information was known to Defendants when they filed the Notice of Removal. As discussed above, the United States Court of Appeals for the Fifth Circuit instructs that Section 1653, which governs amendments to pleading to show jurisdiction, should be liberally construed to avoid dismissals on technical grounds and that amendments are permitted so long as the amendments address "defective allegations of jurisdiction" and not a defect in jurisdiction itself. *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 511-12 (5th Cir. 1985) (section 1653 applies to technically inadequate allegations of jurisdiction, not new causes of action).

The Fifth Circuit takes the position that, "'if jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded, the formal defect in the pleadings will not deprive the Court of jurisdiction at the time when the action was filed, if such defect was later corrected.'" *Kaufman v. W. U. Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955) (quoting *Stern v. Beer*, 200 F.2d 794 (6th Cir. 1953)); *see also Firemen's Ins. Co. of Newark, N.J. v. Robbins Coal Co. Inc.*, 288 F.2d 349 (5th Cir. 1961) (party seeking removal failed to allege corporate citizenship in its

petition but was allowed to amend through the use of 28 U.S.C. § 1653).

The fact that Defendants initially pleaded only the members' and trustees' citizenship without identifying them by name, while defective to establish this Court's jurisdiction, does not destroy jurisdiction. Santander does not dispute the citizenship of any defendant, nor does it suggest that complete diversity is absent now or was at the time that Defendants filed their Notice of Removal.

Because the record establishes a substantial likelihood that jurisdiction exists, and has existed since the time that Defendants removed this case, the Court should accept the subsequent allegations contained in Defendants' Response as curative of the defects in the Notice of Removal. *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516 (5th Cir. 2015); *Nadler v. Am. Motors Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985). And, because neither the actual fact of diversity of citizenship among the parties, nor that the amount in controversy exceeds $75,000 is in dispute, the undersigned finds no basis to remove this matter to state court and recommends that Santander's Motion to Remand be denied.

## II.    Defendants' Motions to Dismiss or Transfer

### 1.    *Personal Jurisdiction*

Defendants first argue that this Court lacks personal jurisdiction over Defendants. The undersigned notes that the question of whether the Court has personal jurisdiction over a nonresident car dealership is a familiar one in the Northern District of Texas; the issue has come up several times in similar litigation brought by Santander. With just one exception, courts considering this question

under similar factual circumstances have concluded they lacked personal jurisdiction over the nonresident car dealership. *Compare Santander Consumer USA, Inc. v. Car Smart, Inc.*, No. 3:09-cv-2317-G, 2010 WL 3703848 (N.D. Tex. Sept. 20, 2010) (finding the court had jurisdiction) *with Santander Consumer USA, Inc. v. Shults Ford, Inc.*, No. 3:11-cv-614-L, 2011 WL 2601520 (N.D. Tex. June 30, 2011) (finding the court did not have jurisdiction); *Santander Consumer USA, Inc. v. Anchor Motor Co.*, No. 3:13-cv-154-N, 2013 WL 10914281, at *3 (N.D. Tex. Apr. 30, 2013); *Santander Consumer USA, Inc. v. Union Pontiac-GMC, Inc.*, No. 3:16-cv-2420-M, 2017 WL 2362046, at *2 (N.D. Tex. May 31, 2017); *Santander Consumer USA, Inc. v. Miami Auto. Retail, Inc.*, No. 3:17-cv-1090-N, 2017 WL 10126304, at *3 (N.D. Tex. June 26, 2017); *Santander Consumer USA, Inc. v. Mayors Auto Grp.-Woodside, LLC*, No. 3:16-cv-2549-L (BF), 2017 WL 7520614, at *4 (N.D. Tex. Aug. 28, 2017).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant to the same extent as a forum state court. *See Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994). A Texas state court can exercise jurisdiction over a non-resident if two preconditions are met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the Constitution. *See Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.

1990).

To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068.

The "minimum contacts" prong of the due process analysis can be met through contacts giving rise to either specific or general jurisdiction. *See Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). In contrast, specific personal jurisdiction is established through the defendant's contacts with the forum state arising from, or related to, the cause of action. *See Gundle*, 85 F.3d at 205.

If the plaintiff makes a prima facie showing of minimum contacts, the burden shifts to the defendant to show that the court's exercise of jurisdiction would not comply with "fair play" and "substantial justice." *Freudensprung*, 379 F.3d at 343. In making a fundamental fairness determination, a court must examine: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution

of controversies; and (5) the states' shared interest in furthering fundamental social policies. *See Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008); *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

Here, it is clear, and the parties do not dispute, that the Court lacks general jurisdiction over Defendants, none of which is incorporated in or maintains its principal place of business in Texas. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 749-50 (2014). With respect to specific jurisdiction, Defendants maintain they have no meaningful or jurisdictional contacts in Texas. Santander points to several alleged contacts that it argues establish specific jurisdiction, including that: (1) Defendants each entered into a Master Agreement with Santander, a Texas-based company, to govern an indefinite business relationship; (2) the Agreements were prepared, executed, and negotiated by Santander in Texas; (3) Defendants solicited, assigned, and delivered 295 retail installment contracts to Santander in Texas; and (4) the parties expressly agreed that Texas law would govern the Agreements. *See* Dkt. No. 17 at 3, 9.

But, as Texas courts have consistently held, these alleged contacts do not give rise to specific jurisdiction. "Merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Neither does negotiating, communicating about, developing, or carrying out a contract "constitute the required purposeful availment of the benefits and protections of Texas law." *Id.* (citing *Holt Oil*, 801 F.2d at 778). Moreover, while a choice of law provision is relevant to personal jurisdiction analysis,

it is not determinative. *See Burger King*, 471 U.S. at 482; *Electrosource, Inc. v. Horizon Battery Techs, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999) ("[A] choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction."). The contacts that Santander references as to the creation and execution of the Agreements are insufficient to demonstrate minimum contacts. Similar to arguments that Santander has previously made in litigation involving similar contacts, "the evidence presented by [Santander] indicates that aspects of the Agreement[s] that occurred in Texas were all performed by [Santander].... [Santander]'s unilateral activities in Texas are insufficient to establish personal jurisdiction over Defendant[s]." *Union Pontiac-GMC*, 2017 WL 2362046, at *3 n.1 (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Neither are Defendants' contacts with Texas sufficient to establish personal jurisdiction when considered collectively. "In a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Burger King*, 471 U.S. at 479).

Here, there is little indication that Defendants purposefully availed themselves of Texas. First, it does not appear that the parties had previous business dealings prior to entering into the Agreements at issue, nor is there any evidence of prior negotiation between Santander and the Defendants. Further, the Agreements themselves merely provide Defendants the option to offer and sell retail installment

contracts to Santander; they neither require Defendants to sell any contracts to Santander nor to take any action should Defendants decide not to sell any contracts to Santander. In other words, there is no requirement to perform at all, in Texas or otherwise. And the Agreements do not appear to contemplate future consequences or obligations that would suggest Defendants intended to avail themselves of Texas or provide any basis for Defendants to anticipate being haled into court there.

Second, the terms of the Agreements do not demonstrate a strong connection to Texas. Other than the one sentence choice of law provision stating that the "Agreement shall be interpreted pursuant to the laws of the State of Texas," there is no mention of Texas. *See, e.g.*, Dkt. No. 18 at 9-14. And, as discussed, a choice of law provision is alone insufficient to confer jurisdiction. *Burger King*, 471 U.S. at 482. Instead, the court must evaluate the quality and nature of a defendant's activities in their totality to determine whether they purposefully availed themselves of the forum state's privileges and obligations. *See Electrosource, Inc.*, 176 F.3d at 871. The facts here make clear that the Greater Florida Panhandle is the center of the parties' dealings and activities. The Defendant dealerships are all located in the Greater Florida Panhandle; the Agreements were performed in the Greater Florida Panhandle; and they governed retail installment contracts on automobiles that were sold by Defendants to local consumers in the Greater Florida Panhandle. *See* Dkt. No. 11 at 4. And, Defendants maintain they negotiated and executed the Agreements from their dealerships and never in Texas. *See id.* at 4.

Finally, the course of dealings between Santander and the Defendants is

-15-

limited in both scope and numeracy. While the nine Defendants collectively sold Santander approximately 295 contracts, Santander confirms that, individually, no dealership sold Santander more than 81 contacts, and some sold as few as 5. *See* Dkt. No. 17 at 3. This is a comparable, though notably smaller, number than district courts have previously regarded as insufficient course of dealings to give rise to specific jurisdiction. *See, e.g.*, *Miami Automotive Retail*, 2017 WL10126304, at *4 (finding the parties' course of dealings was reasonably limited where Defendant dealership sold Santander 178 contracts under the Agreement); *Union Pontiac-GMC, Inc.*, 2017 WL 2362046, at *5 (finding the same regarding 100 contracts). And, there is no evidence the parties have engaged in further negotiations or have otherwise had frequent or significant contact that would indicate the type of sustained contractual relationship that constitute minimum contacts such that the Defendant dealerships should anticipate being haled into court in Texas. Santander contends that the Defendant dealerships "'reached out beyond' their home states and 'created continuing relationships and obligations' with Texas-resident Santander" by "delivering the Dealer Agreements to Santander in Texas and by soliciting, assigning, and delivering the 295 contracts valued at issue in this suit to Santander in Texas." Dkt. No. 17 at 3. But not only are these actions incidental to the sole Agreement Santander executed with each Defendant, the evidence confirms that the Agreements were delivered electronically, and the required documentation related to loans made under the Agreements were to be sent, not to Texas, but to Santander's various offices in Tennessee and Ohio. In other words, "[t]he sole justification for personal jurisdiction

appears to be Defendant[s'] contractual relationship with [Santander] under the Agreements, which rests on "the mere fortuity that [Santander] happens to be a resident of the forum." *Anchor Motor Co.*, 2013 WL 10914281, at *6 (quoting *Holt Oil*, 801 F.2d at 778).

Considering all these factors, Santander has failed to make a prima facie showing that personal jurisdiction is proper. Accordingly, this Court should find it lacks personal jurisdiction over the Defendants.

### 2.    *Venue*

The remaining question is whether the Court should dismiss this case for lack of personal jurisdiction or transfer the action.

Venue is proper in any (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. *See* 28 U.S.C. § 1391.

Santander contends that venue is proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events and omissions giving rise to the claim occurred in the Northern District of Texas at Plaintiff's Dallas, Texas offices." Dkt. No. 17 at 16. Defendants argue that venue is not proper in the Northern District of Texas and that the Court should dismiss under Federal Rule of Procedure 12(b)(3), or alternatively,

transfer the action to the Northern District of Florida pursuant to 28 U.S.C. § 1404(a).

As already discussed, the activities giving rise to the underlying claims in this action were predominantly conducted from the Defendant dealerships, most of which are located in Pensacola, Florida, and none of which are located in Texas. Defendants negotiated and performed the Agreements from their dealerships in the Greater Florida Panhandle and Santander does not allege any other specific events or omissions that occurred in Texas. It is undisputed that no Defendant can be deemed a resident of Texas, and the undesigned has already concluded that Defendants are not subject to personal jurisdiction in this district. *See* 28 U.S.C. § 1391(b)(1)-(b)(2). Accordingly, the undersigned finds that venue is not proper in the Northern District of Texas.

But Defendants also ask this Court to transfer this case to the Northern District of Florida pursuant to 28 U.S.C. § 1404(a). Under § 1404(a), the Court may transfer a case to a "district or division where it might have been brought" after considering the "convenience of the parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a); *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). If venue is proper in another district, the Court must determine whether transfer is warranted under a number of public and private factors. *In re Volkswagen AG*, 371 F.3d at 203. The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft*

*Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: "(1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

Defendants argue that the Pensacola Division of the Northern District of Florida is a proper transfer venue because all Defendants are either subject to general jurisdiction in Florida because they are incorporated and have their principal place of business there, or because they have consented to the personal jurisdiction of the Northern District of Florida. *See* Dkt. No. 11 at 13; 28 U.S.C. § 1391(b)(3). Defendants further argue that the proposed transfer venue is proper under Section 1391(b)(2) because a substantial portions of the alleged events or omissions giving rise to Santander's claims occurred at the Defendant' dealerships, which are predominantly located in the Northern District of Florida.

And Defendants contend that both the public and private factors weigh in favor of transferring the case to the Northern District of Florida. Because Defendants' conduct with respect to the Agreements – namely, their execution, performance, and alleged breach of terms that is the subject of this dispute – took place at Defendants' dealerships, most, if not all, of the relevant documents and physical evidence related to Santander's claims are located in the Northern District of Florida, or substantially closer to the Northern District of Florida than the Northern District of Texas. Defendants state, and the Court notes, that the three dealerships not located in the

Northern District of Florida are located in Daphne, Alabama; Foley, Alabama; and Brookhaven, Mississippi, which are, respectively, 51.8, 39.1, and 243 miles from Pensacola, Florida, but 596, 624, and 453 miles from Dallas, Texas.

Defendants also note that a greater number of potential witnesses, including third-party consumers who purchased the vehicles whose condition is central to Santander's breach of contract claims and former employees of the Defendant dealerships, reside in or near Pensacola, Florida; and thus the Northern District of Florida would have greater subpoena power to compel the testimony of unwilling witnesses. Further, Defendants argue that the key witnesses in this case are the Defendant dealerships' personnel with knowledge of the Agreements and the alleged misrepresentations and withholding of funds constituting breach; and the cost of attendance for these witnesses, as well as the non-party witnesses referenced above, is substantially lower if the case is tried in the Northern District of Florida than in the Northern District of Texas.

Finally, Defendants raise as a practical consideration the fact that a key issue in this case will be the condition, quality, and features of the vehicles sold in connection with the retail installment contracts that gave rise to this case, all of which were sold within the Greater Florida Panhandle. Transfer will thus mean easier access for the parties to conduct physical evaluations of these vehicles to properly investigate their claims.

As to the public factors, Defendants argue that relative congestion of the courts supports transfer, as the average time from filing to disposition or trial is 16.7 or 26.8

months in the Northern District of Texas and 9.6 or 22.4 months in the Northern District of Florida. *See* UNITED STATES COURTS, U.S. District Court – Federal Court Management Statistics at 34, 90 (December 31, 2021). Defendants further contend that this is a localized dispute in which Florida has a strong interested in litigating locally, because Santander's claims involve vehicle dealerships predominantly located in the Florida Panhandle who sold vehicles and related services to consumers in the local market. Finally, Defendants concede that Texas law governs but contend that because the underlying dispute requires only the use of basic contract law that is common to most jurisdictions, this factor does not weigh against transfer to the Northern District of Florida.

Santander argues that the Plaintiff's choice of forum is typically given great weight and should not be disturbed unless it is clearly outweighed by other considerations. *See* Dkt. No. 17 at 17. Santander further argues that mere inconvenience to Defendants, or even to non-party witnesses, is insufficient to warrant transfer. *See id.* Santander also notes that many of its witnesses and relevant documents are located in Texas and disputes Defendants' contention that several of the dealerships' customers would need to testify or that physical of the vehicles will be required to adjudicate the claims such that convenience weighs strongly in favor of transferring the case to the Northern District of Florida. *See id.* at 20.

In contending that the public factors do not support transfer, Santander relies on numerous Texas state appellate court opinions, which are not binding on this

Court, to argue that Texas has a substantial interest in adjudicating Santander's claims against out-of-state auto-dealerships because of the State's interest in providing a convenient forum for redressing injuries inflicted by foreign actors. And Santander argues that the fact that the parties agreed that Texas law would govern the Agreements weighs in favor of the case remaining within Santander's chosen forum.

After considering these factors, the undersigned concludes that this case should be transferred to the Northern District of Florida. As a general principle, courts prefer transfer to dismissal. *See Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3:15-cv-3797-B, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016); *see also Mayors Auto Group-Woodside, LLC*, 2017 WL 7520614, at *5. And, although the undersigned found that Santander failed to make its prima facie showing as to personal jurisdiction and Defendants requested a transfer if the Court found personal jurisdiction, the Fifth Circuit has recognized that 28 U.S.C. § 1406(a) allows a transfer of venue "where the first forum chosen is improper due to the existence of some obstacle to adjudication on the merits," including the lack of personal jurisdiction. *Herman v. Cataphora*, Inc., 730 F.3d 460, 466 (5th Cir. 2013).

3.    *Failure to State a Claim*

Defendants additionally argue that, in the event this Court asserts personal jurisdiction over Defendants, the case be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because the undersigned recommends the Court find it lacks personal jurisdiction over Defendants, the Court should not

take up this argument.

## Recommendation

For the reasons and to the extent explained above, the Court should

- DENY Plaintiff Santander's Motion to Remand to State Court [Dkt. No. 13];

- GRANT Defendants' Alternative Motion to Transfer Venue under 28 U.S.C. § 1404(a) [Dkt. No. 10] and ORDER that this case be transferred to the Northern District of Florida for the convenience of the parties and in the interest of justice;

- DENY as moot Defendants' Alternative 12(b)(3) Motion to Dismiss for Improper Venue [Dkt. No. 10]; and

- DENY Defendants' Alternative 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. No. 10]; and

- leave pending on transfer Defendants' Alternative 12(b)(6) Motion to Dismiss for Failure to State a Claim [Dkt. No. 10].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation

where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 1417 (5th Cir. 1996).

DATED: May 13,   2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE